UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA L. PALMER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SPRINT NEXTEL CORPORATION,<br><br>　　　　　　Defendant. | CASE NO. C09-1211JLR<br><br>ORDER DENYING MOTION TO DISMISS |

## I.  INTRODUCTION

This matter comes before the court on Defendant Sprint Nextel Corporation's ("Sprint") motion to dismiss (Dkt. # 12). Sprint requests that the court dismiss Plaintiff Sandra L. Palmer's state law claims on the basis that they are preempted by federal law. The parties have not requested oral argument. Having considered the motion, as well as all papers filed in support and opposition, and for the following reasons, the court DENIES the motion (Dkt. # 12).

ORDER- 1

## II. BACKGROUND

Ms. Palmer asserts claims against Sprint under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and RCW 80.36.400 ("ADAD statute") arising from telephone calls allegedly received on her cellular telephone and her home telephone beginning in late March 2007 and continuing into April 2007. (Am. Compl. (Dkt. # 10) ¶ 2.1.) The calls consisted of a pre-recorded message delivered by an automatic dialing and announcing device ("ADAD"). (*Id*. ¶ 2.2) The message identified the calls as commercial solicitation calls originating from Sprint, and solicited Ms. Palmer to purchase additional lines for her cellular telephone. (*Id*.) Sprint now moves to dismiss Ms. Palmer's state law claims under Washington's ADAD statute, arguing that the TCPA implicitly preempts the ADAD statute.

## III. ANALYSIS

**A. Legal Standard on Motion to Dismiss**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see al-Kidd v. Ashcroft*, 580 F.3d 949,

956 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The preemption of a state law can serve as the basis for dismissal. *E.g., Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1168 (9th Cir. 2008).

**B.  Federal Preemption of State Law**

"Congress has the constitutional power to preempt state law, and may do so either expressly—through clear statutory language—or implicitly." *Id.* at 1164 (citations omitted). Sprint argues that the TCPA implicitly preempts the ADAD statute.[1] (Mot. at 8-15.) Two types of implied preemption exist: field preemption and conflict preemption. *Whistler Invs.*, 539 F.3d at 1164. As the Ninth Circuit teaches:

> Under field preemption, preemption is implied when Congress "so thoroughly occupies a legislative field," that it effectively leaves no room for states to regulate conduct in that field. Under conflict preemption, Congress's intent to preempt state law is implied to the extent that federal law actually conflicts with any state law. Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives.

*Id.* (citations omitted).

In resolving questions of preemption, courts must be guided by two cornerstones of preemption jurisprudence. *Wyeth v. Levine*, __ U.S. __, 129 S. Ct. 1187, 1194 (2009).

---

[1] Sprint does not argue that the TCPA expressly preempts the ADAD statute. (*See, e.g.,* Reply (Dkt. # 21) at 10.)

ORDER- 3

First, courts must recall that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Id*. (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id*. at 1194-95 (quoting *Lohr*, 518 U.S. at 485). This tenet applies with particular force when Congress legislates in fields traditionally occupied by the states. *Id*.

**C.  Telephone Consumer Protection Act**

In 1991, Congress passed the TCPA in response to the growing problem of unrestricted telemarketing, which Congress viewed both as an invasion of privacy and as a risk to public safety. Pub. L. No. 102-243, 105 Stat. 2394, §§ 5-6 (1991); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The TCPA makes it unlawful, *inter alia*, "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission . . . ." 47 U.S.C. § 227(b)(1)(B). The Federal Communications Commission ("FCC") has subsequently adopted additional exemptions to the TCPA's general prohibition of prerecorded telephone calls, including for prerecorded calls "made to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(a)(2)(iv) (2008).

In passing the TCPA, Congress acted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968; *see Satterfield*, 569 F.3d at 954. As the Ninth Circuit explains:

> The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. The consumers complained that such calls are a "nuisance and an invasion of privacy." The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic telephone dialing systems] to communicate with others by telephone in a manner that would be an invasion of privacy.

*Satterfield*, 569 at 954 (citations omitted). Congress acted to curb certain telemarketing practices in express recognition that a majority of the states had already begun regulating and restricting such telemarketing practices. *See* § 7, 105 Stat. at 2394. Specifically, Congress found that "[o]ver half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices." § 7, 105 Stat. at 2394.

Congress expressly addressed the interplay between the TCPA and analogous state laws by including a savings clause, 47 U.S.C. § 227(e), that speaks to the TCPA's preemptive effect on state laws. In relevant part, the savings clause provides:

(e) Effect on State law

(1) State law not preempted

> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits--
>
>> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>>
>> (B) the use of automatic telephone dialing systems;
>>
>> (C) the use of artificial or prerecorded voice messages; or
>>
>> (D) the making of telephone solicitations.

27 U.S.C. § 227(e). As discussed more fully below, federal and state courts have differed as to the correct interpretation of § 227(e). *Compare, e.g., United States v. Dish Network, LLC*, __ F. Supp. 2d __, No. 09-3073, 2009 WL 3683123, at *10 (C.D. Ill. Nov. 4, 2009), *and Stenehjem v. FreeEats.com, Inc.*, 712 N.W.2d 828, 834 (N.D. 2006), *with Chamber of Commerce of the United States v. Lockyer*, No. 2:05-CV-2257MCEKJM, 2006 WL 462482, at *7-8 (E.D. Cal. Feb. 27, 2006). This split turns principally on whether the phrase "or which prohibits" applies only to state laws governing intrastate telecommunications, as opposed to both intrastate and interstate telecommunications. The FCC, in its interpretation of the TCPA, opines that "any state regulation of interstate telemarketing calls that differs from our rules almost certainly would conflict with and frustrate the federal scheme and almost certainly would be preempted." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 F.C.C.R. 14014, 14064, ¶ 84 (2003) ("FCC 2003 Report and Order"). The FCC 2003 Report and Order provides that the FCC "will consider any alleged conflicts between

state and federal requirements and the need for preemption on a case-by-case basis," and that parties may petition the FCC for declaratory rulings regarding preemption issues.[2] *Id*. at 14064-65, ¶ 84.

**D. ADAD Statute**

In 1986, prior to the enactment of the TCPA, the Washington Legislature passed the ADAD statute to make it more difficult for commercial telephone solicitors to interrupt people at home and at work. *See* RCW 80.36.400; *Spafford v. Echostar Commc'ns Corp.*, 448 F. Supp. 2d 1220, 1222 (W.D. Wash. 2006).[3] The ADAD statute restricts the use of ADADs, which greet recipients with a prerecorded message, and establishes that a violation of the ADAD statute constitutes a per se violation of Washington's Consumer Protection Act. The ADAD statute provides in full:

> (1) As used in this section:
>
> (a) An automatic dialing and announcing device is a device which automatically dials telephone numbers and plays a recorded message once a connection is made.
>
> (b) Commercial solicitation means the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services.

---

[2] To date, however, it appears the FCC has not issued any declaratory rulings, despite requests that it do so. (*See* Resp. (Dkt. # 15) at 20.) Sprint points to no such declaratory rulings in support of its motion.

[3] The court has previously considered the ADAD statute in the context of a First Amendment challenge. *See Spafford*, 448 F. Supp. 2d. at 1222-26. Contrary to Ms. Palmer's arguments, however, the court did not address the issue of federal preemption in *Spafford*. (Resp. at 19.)

ORDER- 7

   (2) No person may use an automatic dialing and announcing device for purposes of commercial solicitation. This section applies to all commercial solicitation intended to be received by telephone customers within the state.

   (3) A violation of this section is a violation of chapter 19.86 RCW. It shall be presumed that damages to the recipient of commercial solicitations made using an automatic dialing and announcing device are five hundred dollars.

   (4) Nothing in this section shall be construed to prevent the Washington utilities and transportation commission from adopting additional rules regulating automatic dialing and announcing devices.

RCW 80.36.400. The Washington Legislature found that use of automatic dialing and announcing devices for commercial solicitation: "(1) [d]eprives consumers of the opportunity to immediately question a seller about the veracity of their claims; (2) subjects consumers to unwarranted invasions of their privacy; and (3) encourages inefficient and potentially harmful use of the telephone network." Laws of 1986, ch. 281, § 1.

**E. The TCPA Does Not Implicitly Preempt Washington's ADAD Statute**

  Sprint argues that the TCPA implicitly preempts the ADAD statute. In support of this argument, Sprint asserts that the ADAD statute conflicts with the TCPA because it both upsets the balance struck by Congress between individual privacy and commercial free speech and frustrates the TCPA's national and uniform regulatory scheme. (Mot. at 12.) The parties agree that Washington's ADAD statute is more restrictive than the TCPA because it prohibits all use of ADADs for commercial solicitation, RCW 80.36.400(b)(3), whereas the TCPA and the federal regulations exempt certain types of ADAD solicitation calls, such as, *inter alia*, calls made with the recipient's consent, 47 U.S.C. § 227(b)(1)(A), and calls made to a person with whom the caller has an

established business relationship, 47 C.F.R. § 64.1200(a)(2)(iv). The Ninth Circuit has not addressed the TCPA's potential preemptive effect on Washington's ADAD statute or other state ADAD laws, although a range of federal and state courts have considered similar preemption challenges.

1. <u>Presumption Against Preemption</u>

The court begins with the presumption that Congress did not intend the TCPA to preempt state laws like the ADAD statute. *See Wyeth*, __ U.S. __, 129 S. Ct. at 1194; *Bates v. Dow Agroscis. LLC*, 544 U.S. 431, 449-50 (2005). Sprint argues, however, that the presumption does not apply here because the federal government has historically regulated long-distance telecommunications. (Mot. at 7 n.3 (citing *Lockyer*, 2006 WL 462482, at *6).) Although the court agrees that there is a "long history of federal presence in regulating long-distance telecommunications," *Ting v. AT & T*, 319 F.3d 1126, 1136 (9th Cir. 2003), Sprint's argument sweeps too broadly when applied to ADAD regulation. Both Congress and the FCC have recognized that the states have exercised their police powers to regulate or prohibit telecommunications that harm their citizens, and that state action in the area of ADAD regulation preceded the TCPA. § 7, 105 Stat. at 2394; FCC 2003 Report and Order at 14060-62, ¶¶ 75, 78. Washington's enactment of the ADAD statute in 1986 is a clear example of such earlier state action. Further, though *Lockyer* followed the argument advanced by Sprint, other courts to consider this issue have concluded that the presumption against preemption applies. *See, e.g., FreeEats.com, Inc. v. Carter*, No.1:06-cv-1403LJM-WTL, 2006 WL 3025810, at *6 (S.D. Ind. Oct. 24, 2006), *rev'd on other grounds*, 502 F.3d 590 (7th Cir. 2007);

*Stenehjem*, 712 N.W.2d at 837; *Utah Div. of Consumer Prot. v. Flagship Capital*, 125 P.3d 894, 900 (Utah 2005). Absent a further showing from Sprint, the court declines to abandon the traditional presumption against preemption.

2. Field Preemption

With respect to field preemption, the court must consider whether Congress intended to occupy the field by enacting the TCPA. *Whistler Invs.*, 539 F.3d at 1164. Turning to the TCPA savings clause, it is clear that Congress anticipated continuing state involvement in the field of ADAD regulation and that Congress did not intend to occupy the field. *See* 47 U.S.C. § 227(e); *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1548 (8th Cir. 1995) ("the preemption provision makes it clear that Congress did not intend to 'occupy the field' of ADAD regulation."); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3rd Cir. 1998) (the TCPA "does not reflect an attempt by Congress to occupy this field of interstate communication"); *Stenehjem*, 712 N.W.2d at 839 ("The statutory language of the TCPA clearly expresses the intent of Congress that the TCPA was not meant to wholly occupy the field within its subject matter, and was not intended to preempt all state laws affecting the same subject."). The court finds that the TCPA does not implicitly preempt the ADAD statute on the basis of theory of field preemption.

3. Conflict Preemption

With respect to conflict preemption, the court first asks whether Sprint can comply with both the TCPA and the ADAD statute. *Whistlers Invs.*, 539 F.3d at 1164. This question is easily resolved: although the ADAD statute is more restrictive than the TCPA, Sprint has not demonstrated that its compliance with the ADAD statute would

ORDER- 10

place it in direct noncompliance with the TCPA on the facts of this case. *Cf. Stenehjem*, 712 N.W.2d at 839; *Flagship Capital*, 125 P.3d at 900-01. The court finds that TCPA does not implicitly preempt the ADAD statute on the basis that Sprint's compliance with both the TCPA and the ADAD statute would be impossible.

The court next asks whether the ADAD statute poses an obstacle to the accomplishment of Congress's objectives underlying the TCPA. *Whistlers Invs.*, 539 F.3d at 1164. "A state law is impliedly preempted where it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Laster v. AT & T Mobility LLC*, 584 F.3d 849, 857 (9th Cir. 2009) (quoting *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 988 (9th Cir. 2007)). However, the mere fact of "[t]ension between federal and state law is not enough to establish conflict preemption." *Shroyer*, 498 F.3d at 988 (quoting *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007)).

Federal and state courts have differed in their interpretations of the TCPA savings clause, but generally agree that it expresses Congress's intent with respect to preemption. In such instances, where Congress has made its intent known through explicit statutory language, the courts' task is "an easy one" and largely a matter of statutory interpretation. *Stenehjem*, 712 N.W.2d at 842 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). Some courts have interpreted the language of § 227(e) to provide that "the TCPA does not preempt state laws that: (1) impose more restrictive intrastate requirements or regulations; or (2) prohibit any of the conduct set forth in subclauses (A) through (D)." *Dish Network*, __ F. Supp. 2d. __, No. 09-3073, 2009 WL 3683123, at

*10; *see, e.g., Carter*, 2006 WL 3025810, at *6-8; *Stenehjem*, 712 N.W.2d at 835-42; *Flagship Capital*, 125 P.3d at 897-901; *TSA Stores, Inc. v. Dep't of Agric. & Consumer Servs.*, 957 So.2d 25, 27-29 (Fla. Dist. Ct. App. 2007); *see also Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns*, 106 F.3d 1146, 1153 (4th Cir. 1997); *Van Bergen*, 59 F.3d at 1547-48; *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707, 717-18 (Tex. 2006). By contrast, other courts have concluded that § 227(e) does not preserve the right of states to restrict interstate telecommunications and that the TCPA preempts states laws that prohibit certain interstate telecommunications. *See, e.g., Lockyer*, 2006 WL 462482, at *6-8; *Charvat v. Teleytics, LLC*, No. 05AP-1279, 2006 WL 2574019, at *10 (Ohio Ct. App. Aug. 31, 2006).

Having reviewed the statutory language, the case law, and the arguments of the parties, and mindful of the presumption against preemption, the court joins with those courts that have interpreted § 227(e) as evidencing Congress's intent not to preempt state laws that prohibit interstate telemarketing calls that use ADADs for purposes of commercial solicitation. The plain language of § 227(e) all but mandates this result. In *Stenehjem*, the Supreme Court of North Dakota explained as follows:

> The word "or" is disjunctive in nature and ordinarily indicates an alternative between different things or actions. Terms or phrases separated by "or" have separate and independent significance. Coupled with the comma preceding "or," which indicates a separate clause, the statutory language [of § 227(e)] clearly creates two distinct and independent phrases. Thus, read logically and grammatically, the statute states that nothing in the TCPA preempts any state law "that imposes more restrictive intrastate requirements or regulations on" the enumerated classes of calls, and nothing in the TCPA preempts any state law "which prohibits" calls within the enumerated list. "Intrastate" unambiguously modifies only the first

clause, not the second. If Congress had intended that the second part of the statute apply only to intrastate calls, "it could simply have said that."

*Stenehjem*, 712 N.W.2d at 834 (citations omitted); *see Dish Network*, __ F. Supp. 2d __, 2009 WL 3683123, at *10; *Carter*, 2006 WL 3025810, at *8 n.8. The court is persuaded that the interpretation of § 227(e) articulated in *Stenehjem* is the better reasoned approach, and the court hereby adopts this interpretation as its own. In light of the plain language of § 227(e), the court is satisfied that Congress did not intend the TCPA to preempt the ADAD statute, which "prohibits" the type of conduct enumerated in subclauses (B), (C), and (D), on the facts of this case.

Sprint also argues that the court should defer to the FCC's opinion that the TCPA preempts state regulation of interstate telemarketing calls. (Mot. at 13.) Courts give broad deference to an agency's interpretation if it satisfies the two-step *Chevron* test. *Satterfield*, 569 F.3d at 952 (citing *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). First, courts must determine whether the intent of Congress is clear and, if so, give effect to the unambiguously expressed intent of Congress. *Id*. Second, if a statute is silent or ambiguous on the question, courts must defer to the agency's interpretation, provided the interpretation is based on a permissible construction of the statute. *Id*. Here, the first step of this test resolves the inquiry. In *Satterfield*, the Ninth Circuit, addressing a different question of interpretation under the TCPA, explained as follows:

> The first step under the *Chevron* analysis is to determine "whether Congress has directly spoken to the precise question at issue." If it has, Congress's intent must be enforced and that is the end of the matter. "If a court, employing traditional tools of statutory construction, ascertains that

Congress had an intention on the precise question at issue, that intention is the law and must be given effect." "It is well settled that the starting point for interpreting a statute is the language of the statute itself." . . . If, under theses canons, or other traditional means of determining Congress's intentions, we are able to determine that Congress spoke clearly, we need not look to the FCC's interpretations.

*Satterfield*, 569 F.3d at 953 (citations omitted). Having already determined that Congress, pursuant to § 227(e), spoke directly on the issue of preemption raised by Sprint's motion, the court need not look to the FCC's interpretation for additional guidance and therefore declines to do so.[4]

In light of the foregoing, the court finds that the TCPA does not implicitly preempt the ADAD on the basis that the ADAD statute stands as an obstacle to the accomplishment of Congress's objectives in passing the TCPA.

## IV. CONCLUSION

The court DENIES Sprint's motion to dismiss (Dkt. # 12).

Dated this 6th day of December, 2009.

_____
JAMES L. ROBART
United States District Judge

---

[4] Sprint also argues that the court should follow an unpublished, oral decision in *Williams v. MCIMetro Access Transmission Services, LLC*, Case No. C08-082-TSZ (W.D. Wash. Nov. 7, 2008), which relied on the FCC's interpretation of the TCPA. (*See* Declaration of Amanda J. Beane (Dkt. # 22), Ex. A (Transcript of Proceedings).) Having reviewed the transcript of the court's decision in *Williams*, the court respectfully declines to adopt this approach.

ORDER- 14