THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANDRA L. PALMER,

            Plaintiff,

   v.

SPRINT SOLUTIONS, INC.,

            Defendant.

**CLASS ACTION**

No. 09-cv-01211 JLR

UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND RESPONSE TO
OBJECTIONS

Noted for Hearing: October 21, 2011

## I.    <u>RELIEF REQUESTED</u>

Pursuant to Rule 23 (e) of the Federal Rules of Civil Procedure, Plaintiff Sandra L.

Palmer, on her own behalf and behalf of three settlement subclasses, seeks final approval of the

Class Action Settlement Agreement, which was preliminarily approved by this Court on June

13, 2011 (Dkt. 73).

## II.    <u>STATEMENT OF FACTS</u>

### A.  Plaintiff's Claims.

In her Class Action Complaint and subsequent amendments (Dkt. 1, 10, 31 and 33),

Plaintiff alleged, on behalf of herself and classes of all similarly situated individuals, that

Defendant had violated the Washington Automatic Dialing and Announcing Device statute (the

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 1
(No. 09-cv-01211 JLR)

**WILLIAMSON
& WILLIAMS**
17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

"WADAD"), RCW 80.36.400, by distributing or causing to be distributed a pre-recorded

telephone commercial solicitation to Washington residents during the four year period

preceding the filing of the initial complaint, i.e. from July 23, 2005 forward, using an automatic

dialing and announcing device ("ADAD"), and that Defendant had violated the federal

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

RCW 80.36.400 provides:

80.36.400. Automatic dialing and announcing device--Commercial solicitation

(1) As used in this section:

> (a) An automatic dialing and announcing device is a device which
> automatically dials telephone numbers and plays a recorded
> message once a connection is made.
> (b) Commercial solicitation means the unsolicited initiation of a
> telephone conversation for the purpose of encouraging a person to
> purchase property, goods, or services.
> (2) No person may use an automatic dialing and announcing device
> for purposes of commercial solicitation. This section applies to all
> commercial solicitation intended to be received by telephone
> customers within the state.
> (3) A violation of this section is a violation of chapter 19.86 RCW. It
> shall be presumed that damages to the recipient of commercial
> solicitations made using an automatic dialing and announcing device
> are five hundred dollars.

Plaintiff Palmer alleged in her initial Complaint and subsequent amendments that she

received pre-recorded messages on her cellular and residential telephones from Defendant

Sprint soliciting her to purchase goods and services, including an additional line for her cellular

telephone, and that Defendant disseminated such messages to a similarly situated class of

Washington residents.

The TCPA, which regulates telemarketing generally, establishes the federal Do Not Call

("DNC") which was created and is maintained by the Federal Communications Commission,



WILLIAMSON
& WILLIAMS    17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

*see* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  The TCPA requires companies making commercial telephone solicitations to maintain an internal list of those customers who have asked not to receive further solicitation calls from the company (an "internal DNC list").  *See generally* 47 C.F.R. § 64.1200(d).  TCPA regulations allow companies a reasonable time—up to 30 days—to process and implement an internal DNC list request.  47 C.F.R § 64.1200(d)(3).  Statutory damages under the TCPA are $500.00 for each violation.  47 U.S.C. § 227(c)(5)(b).

Plaintiff Palmer further alleged that she had made requests to Sprint to not receive further telephone solicitation calls but continued to receive calls, at least some of which were more than 30 days later, in violation of the TCPA, and asserted a claim on behalf of a class composed of similarly situated United States residents for the four-year period before the filing of the complaint (i.e., from June 23, 2005).

In addition, based on information Plaintiff obtained during discovery, Plaintiff had planned to amend her Second Amended Complaint to allege that Sprint has made one or more commercial solicitations to Sprint customers in Washington State less than one year after Sprint or its agents were advised by the customers that she or he did not wish to be called again by Sprint, in violation of the Washington Telephone Solicitation Act ("WTSA"), RCW 80.36.390.

RCW 80.36.390(3)(a) provides:

> If [a] called party states or indicates that he or she does not wish to be called again by [a] company or organization or wants to have his or her name and individual telephone number removed from the telephone lists used by the company or organization making the telephone solicitation, then [] [t]he company or organization shall not make any additional telephone solicitation of the called party at that telephone number within a period of at least one year.  RCW 80.36.390(3)(a).

Statutory damages for violation of the WTSA are set forth in RCW 80.36.390(6) as



follows:

> (6) A person aggrieved by repeated violations of this section may bring a civil action in superior court to enjoin future violations, to recover damages, or both. The court shall award damages of at least one hundred dollars for each individual violation of this section. If the aggrieved person prevails in a civil action under this subsection, the court shall award the aggrieved person reasonable attorneys' fees and cost of the suit.

**B.   Disputed Issues.**

As set forth in Plaintiff Palmer's and Sprint's ("the Parties") Joint Motion for Preliminary Approval, Sprint has provided wireless services to Ms. Palmer since 2003 and concedes that it authorized telemarketing calls to her Sprint cellular phone in 2006 and 2007. The Parties dispute whether Ms. Palmer ever asked Sprint not to call her before these calls were made.  The Parties also dispute whether the calls made or pre-recorded messages delivered to Ms. Palmer violated state or federal law.  In particular, Sprint maintains that it did not use pre-recorded *solicitation* messages, although it concedes leaving pre-recorded *identification* messages in certain instances.  (Declaration of Sheila Dedeaux in Support of Joint Motion for Preliminary Approval (Dkt. 65, ¶ 5)). Sprint also asserts that the Washington Telephone Solicitation Act does not apply to calls made to cellular phones, a legal interpretation Plaintiff disputes.  These legal and factual disputes in part motivated the settlement.

**C.   Brief history of litigation.**

The instant case was originally filed in King County Superior Court, and then removed to this Court by Defendant Sprint.  After considerable formal and informal discovery, including Sprint's deposition of Plaintiff Palmer and its production of hundreds of pages of documents, and intense motion practice related to whether Plaintiff's and the Class claims were preempted

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 4
(No. 09-cv-01211 JLR)

**WILLIAMSON & WILLIAMS**
17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

by federal law, whether Sprint should be compelled to produce certain information and

documents and whether Sprint's pre-recorded identification message initiated a "telephone

conversation" in violation of the WADAD, the parties participated in a mediation with the

Honorable William J. Cahill (ret.) of the San Francisco office of Judicial Arbitration and

Mediation Service ("JAMS") on October 15, 2010. After a full day, arms-length mediation, the

Parties reached the Settlement Agreement given preliminary approval by this Court.

(Declaration of Rob Williamson and Kim Williams (W&W Decl., ¶ 1)).

### D.  Class Relief and Notice to the Class.

The Settlement Agreement establishes a fund of $5,500,000.00 (the "Settlement Fund"

or "Common Fund") from which costs of notice and class administration, attorney's fees for

Class Counsel not to exceed $1,650,000.00 (30% of the Common Fund) and a Class

Representative fee for Ms. Palmer of $20,000.00 will be paid. From the remaining balance,

which the Parties estimate, based on input from Claims Administrator The Garden City Group,

Inc. ("GCG") as to estimated total notice and administration costs of $995,824.86 to

$1,012,824.86, to be approximately $2,817,000 to $2,834,000, payments will be made to all

settlement class members who submit timely and valid claims as detailed below.

The Settlement Classes provisionally certified by the Court in the Revised Preliminary

Approval and Scheduling Order entered on June 13, 2011 (Dkt. 73 at 2) are as follows:

     a.  Individual, non-governmental, and non-business Sprint customers from
          July 23, 2005 to the date the Court grants preliminary approval of this
          Settlement who, while Sprint customers, resided in Washington State
          and received from Sprint directly or from its agents one or more
          commercial telephone solicitations that used an automatic dialing and
          announcing device. This subclass does not include Sprint employees.

     b.  Individual, non-governmental, and non-business Sprint customers from
          July 23, 2005 to the date the Court grants preliminary approval of this



WILLIAMSON & WILLIAMS   17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Settlement who, while Sprint customers, resided in Washington State and received from Sprint directly or from its agents one or more commercial telephone solicitations less than one year after advising Sprint or its agent that he or she did not wish to be called again by Sprint. This subclass does not include Sprint employees.

    c.   Individual, non-governmental, and non-business Sprint customers from July 23, 2005 to the date the Court grants preliminary approval of this Settlement who, while Sprint customers, resided in the United States and received from Sprint directly or from its agents one or more commercial solicitations more than 30 days after making a Sprint-specific internal Do-Not-Call request by advising Sprint or its agent that he or she did not wish to be called again by Sprint.  This subclass does not include Sprint employees.

Under the Payment Protocol (Settlement Agreement, Dkt. 61-8, Exh. 7), each class member who submits a valid claim form in a timely manner will receive up to the statutory amount for each violation ($500 for Classes a. and c. and $100 for Class b.) , capped at a maximum of four violations or, in other words, four times the statutory amount.  If the total claims amount calculated in this way exceeds the amount available in the settlement fund, payments to individual members of the subclasses will be reduced on a pro-rata basis (W&W Decl., ¶ 2).  Further, the Settlement Agreement reflects Sprint's agreement to discontinue using the current version of the pre-recorded message heard when a consumer calls the toll-free number left by Sprint's pre-recorded identification message and instead replace the message with a different pre-recorded message (Settlement Agreement, Dkt. 61-7, Exh. 6); (W&W Decl., ¶ 2).

The Settlement Agreement also provides that, if claims do not exceed the amount set aside for claims payment, any money remaining in the fund will revert as a cy pres payment to the Equal Justice Coalition.  Because it is expected that payments to settlement class members will consume the balance of the Settlement Fund remaining after payments are made for class administration, attorney's fees for Class Counsel and the Class Representative fee, there will be no cy pres reversion (W&W Decl., ¶ 3).



WILLIAMSON
& WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

In the Preliminary Approval Order (Dkt. 73 at 2-3), the Court found that "…the Agreement of the Parties was the result of serious, informed, non-collusive, and arms-length negotiations between competent counsel; that it falls within the range of reasonableness and possible approval; and that it treats all Class Members fairly…"

The Court also approved the Notice Plan, finding that "… these methods of giving notice and the forms of said notices will constitute individual notice to Class Members who are identifiable using reasonable efforts and is the best notice practicable under the circumstances to…Class Members who are not individually identifiable using reasonable efforts.  The Court also finds that this notice plan will fully comply with Fed. R.Civ.Pro.23 and due process requirements of the Washington State Constitution and the United States Constitution (Dkt. 73 at 4-5)."

Because the universe within which Class Members could be found consisted of all current and former Sprint customers since July 23, 2005, and because, with limited exceptions, individual Class Members could not be identified, the Notice Plan required that notice to class members was given by a combination of individual notice and publication.  The Notice Plan required Sprint to send individual notice to all current Sprint accounts (approximately 12.2 million active subscribers, Dedeaux Decl., p. 4, Dkt. 65) as an insert in the monthly billing statement or as an electronic document as part of the monthly online statement, as well as notice by email to approximately 5.9 million former Sprint accounts, and individual notice to seven former customers that Sprint identified through its customer relations activities, as well as Class Members identified by Sprint's vendor, Stream.  In addition, the Notice Plan required that notice be published in such a way that the publication plan, in combination with the direct

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 7
(No. 09-cv-01211 JLR)



WILLIAMSON & WILLIAMS    17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(205) 780-4447
(205) 780-5557 (FAX)
www.williamslaw.com

mail and email notices, was designed to reach 77% of the potential universe within which

Sprint customers, and, therefore, Class Members, would be found (W&W Decl., ¶ 4).

As set forth in the Declaration of Jeanne C. Finegan, APR, a Senior Vice President of

GCG, the Notice Plan has been successfully implemented.  (Declaration of Jeanne C. Finegan,

APR, in Support of Unopposed Motion for Final Approval (Finegan Decl. ¶ 5)).

The postmark exclusion[1] and objection deadlines were September 21, 1011 so these

deadlines have expired (W&W Decl., ¶ 5).  The Classes have reacted to the Settlement

Agreement in a favorable manner in that there have been only 98 requests for exclusion[2] and

only two objections (W&W Decl., ¶ 5).  Plaintiff's Response to the two objections is set forth

in detail below.

The postmark Claim Form deadline is 30 days after October 21, 2011 or November 20,

2011 (W&W Decl., ¶ 8).

**E.  Additional Settlement Relief.**

The Settlement Agreement establishes a fund of $5,500,000.00 (the "Settlement Fund"

or "Common Fund") from which costs of notice and class administration, attorney's fees for

Class Counsel not to exceed $1,650,000.00 (30% of the Common Fund) and a Class

Representative fee for Ms. Palmer of $20,000.00 will be paid.  In addition to relief for the

Class, the settlement provides for payment of the costs of settlement administration from the

Settlement Fund.  Actual administration costs through August 2011 total $797,824.86 based on

---

[1] The names of the persons requesting exclusion are listed on Attachment 1 to the proposed Final Order and Judgment (W&W Decl., ¶ 6).
[2] 98 requests for exclusion is a minute fraction of the total number of potential class members that received notice of the settlement, including over 18 million receiving direct mail or email notice and millions more receiving Notice by Publication  (W&W Decl., ¶ 7).



WILLIAMSON & WILLIAMS
17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

the GCG invoices (W&W Decl., Exh. A). GCG's estimate of costs from September 1, 2011

through November 2001 is $198,000 to $215,000, for total costs of administration of

$995,824.86 to $1,012,824.86 (W&W Decl., ¶ 9).

The Court has also been asked to approve an award of attorney's fees and costs of a

total not to exceed $1,650,000.00 and a class representative service award of $20,000.00 for

Plaintiff Sandra Palmer. A separate motion regarding the payments to Counsel and Ms. Palmer

was submitted to the Court and posted on the website created by the Claims Administrator as

required in the Preliminary Approval Order (Dkt. 73). There has been only one objection to the

requested fees for counsel and to the service award for Plaintiff Palmer (W&W Decl., ¶ 10),

though, as discussed below, there have been two objections to the settlement.

Accordingly, following the Court's entry of the Order for Final Approval of the Class

Action Settlement, Sprint shall, through the Claims Administrator, pay all valid and timely

claims as well as any further costs of administration. Finally, Sprint will pay $20,000.00 for

the class representative fee and $1,650,000.00 to Class Counsel for their fees and expenses.

### III. ISSUE PRESENTED

Is the Settlement Agreement fair, reasonable, and adequate and should the Court grant it

final approval?

### IV. EVIDENCE RELIED UPON

This motion is based upon the Declaration of Plaintiff's counsel Rob Williamson and

Kim Williams, the Declaration of Jeanne C. Finegan, the Petition for Attorney's Fees and Class

Representative Service Award, and the pleadings and files herein.



WILLIAMSON
& WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

1

## V.   AUTHORITY AND ARGUMENT

2

### A.    The Notice Plan Comports with Due Process.

3

4       As referenced above, the Parties have, with the assistance of professional settlement

5   administrator Garden City Group, fully complied with this Court's Order directing notice to the

6   Class.  Rule 23 requires the class receive "the best notice that is practicable under the

7   circumstances, including individual notice to all members who can be identified through

8   reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  Receipt of actual notice by all class members is

9   not required.  "Neither Rule 23 nor due process require "receipt of actual notice by all class

10  members;" rather, "notice should be mailed to the last known addresses of those who can be

11  identified and publication used to notify others ...." *2 NEWBERG ON CLASS ACTIONS, § 8.02 (3rd*

12  *Ed.1992)* (citing *MANUAL FOR COMPLEX LITIGATION, SECOND* ¶ 30.211 (2nd Ed.1985))."

13

14      In this case, the parties, with the assistance of GCG, developed a comprehensive Notice

15  Plan specifically designed to reach the maximum number of members of the classes utilizing

16  different methods.  Direct mail notice via monthly billing inserts and electronic bills was

17  accomplished for approximately 12.2 million current Sprint customers associated with 24.2

18  million customers and another approximately 377 potential class members (Finegan Decl., ¶ 8-

19  14),[3] and email notice was provided to another approximately 4,449,898 (former Sprint

20  customers (5,480,319 email addresses after de-duplication minus 1,030,421 which were

21  undeliverable) (Finegan Decl., ¶ 15-19) and a small percentage of current customers, all of

22  whom are potential class members (W&W Decl., ¶ 11).[4]

23

24

25  [3] Postcard mailings were also sent to 473,481 potential class members when Sprint was unable to deliver its billing
    inserts to this small percentage of its electronically billed customers (Finegan Decl., ¶ 20).

26  [4] In addition, GCG provided Notice of the proposed Class Action Settlement (CAFA Notice) to the Washington
    State Office of the Attorney General and the United States Department of Justice, as required by the Class Action
    Fairness Act, 28 U.S.C § 1711 *et seq.* (Finegan Decl., ¶ 6); W&W Decl., ¶ 12 ).

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 10
(No. 09-cv-01211 JLR)

WILLIAMSON
& WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In addition, as directed in the Revised Preliminary Approval and Scheduling Order (Dkt. 73, 5), notice was published pursuant to a comprehensive plan designed by GCG which, in combination with direct mail and email efforts, was designed to reach 77% of the potential universe within which Class Members could be found in the case (W&W Decl., ¶ 11). The Notice Publication was exceedingly thorough and took in to account reaching **all** cell phone users in the United States (Finegan Decl., ¶ 26). Components included a summary notice published in People Magazine and Sports Illustrated, banner advertising on various websites and a press release issued over PR Newswire's English and Hispanic news lines (Finegan Decl., ¶ 32). The Notice Program exceeded the original projected reach of 77%, reaching an estimated 81 percent of targeted potential Class Members (Finegan Decl., ¶ 38).

The Notice summarized the settlement in plain language and identified the deadlines for making claims, opting out or objecting. The Direct Notice also identified Class Counsel and the Class Representative, the fees that were being sought for each and the payments that will be made to Class Members. Counsel for the parties believes the Direct Notice was an adequate and easily comprehended explanation of the settlement and its terms to Class Members.

**B.      Settlements Are Favored, Particularly Class Action Settlements.**

It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he very essence of a settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.* at 624. There is an overriding public interest in settling litigation; particularly class action suits. *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1225 (9th Cir. 1989). "Naturally, the agreement reached



WILLIAMSON
& WILLIAMS    17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

normally embodies a compromise; in exchange for the saving of cost and elimination of risk,

the parties each give up something they might have won had they proceeded with litigation...."

*United States v. Armour & Co.,* 402 U.S. 673, 681-82 (1971)); *Ellis v. Naval Air Rework*

*Facility,* 87 F.R.D. 15, 19 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) (noting "[a]s a

*quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the

plaintiffs must be willing to moderate the measure of their demands").

**C.      All of the Criteria Established in the Ninth Circuit for Approval of Settlements are Met in This Case.**

Federal Rule of Civil Procedure 23(e) provides that "claims, issues, or defenses of a

certified class may be settled...only with the court's approval," Fed. R. Civ. P. 23(e), and, in

cases in which the settlement "would bind class members, the court may approve [a settlement]

only after a hearing and finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.

23(e)(2). Courts in the Ninth Circuit have been guided by several factors which have been

developed for consideration of the adequacy of the settlement in a class action. As stated in *The*

*Officers for Justice v. The Civil Service Commission of the City and County of San Francisco,*

688 F. 2d 615, 625 (9th Cir. 1982):

> Although Rule 23 (e) is silent respecting the standards by which a proposed settlement is to be evaluated, **the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.** [Citations omitted] The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of the plaintiffs' case; the risk, expenses, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to proposed settlement [Citations omitted] This is by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors. The relative degree of importance to be attached to any particular factor will depend upon and be



1
2

dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.

3   Emphasis supplied. These criteria have been repeatedly applied in other cases in the Ninth

4   Circuit. *See Hanlon v. Chrysler Corp.*, 150 F. 3d 1001, 1026 (9th Cir. 1998), *Linney v. Cellular*

5   *Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998), *Molski v. Gleich*, 318 F. 3d 937, 953

6   (9th Cir. 2003), and most recently in *Rodriguez v. West Publishing Corp.*, --F. 3d--, 2009

7   Westlaw 1085370 (9th Cir. April 23, 2009).

8
9
        1.   Strength of Plaintiff's Case.

10          In this case, Class Counsel believed the Plaintiff's case for violation of the WADAD

11   was strong in that calls placed on or on behalf of Defendant Sprint which subjected Washington

12   residents to a pre-recorded telephone solicitation message, either when they answered their

13   telephone or when they returned the call, were clear violations of Washington law. On the other

14   hand, Plaintiff recognized that Defendant, in the absence of a settlement, would vigorously

15   pursue all available defenses, which included the claim that RCW 80.36.400 is preempted by

16   the less restrictive provisions of the TCPA, an issue that was hotly contested in the trial court.

17
18   While this Court ruled against the preemption defense, there was no question that Defendant

19   would have renewed the argument and appealed, if necessary, to the Ninth Circuit.  In addition,

20   when the parties commenced settlement negotiations, Defendant Sprint had filed a Motion for

21   Summary Judgment arguing that RCW 80.36.400 only prohibits ADAD calls which

22   automatically subject the called party to a verbal exchange with a live telemarketer. *See*

23
24   *Cubbage v. The Talbots, Inc.*, WL 2710628 (2010) (W&W Decl., ¶ 13).

25          Class Counsel also believed that Plaintiff's "Do Not Call" claims for violation of the

26   TCPA, 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d)(3) and related regulations, and the WTSA



were strong based on Ms. Palmer's personal experience and Class Counsel's internet and other research and Sprint's discovery responses.  Nevertheless, the Do Not Call claims were particularly challenging to establish because very few records exist concerning the identities of the parties who requested that Sprint stop calling them, the particulars of the Do Not Call violations at issue (e.g. the dates or time frames when the offending calls were made, how many such calls were made, the telephone numbers to which the calls were made) and which Sprint vendor or vendors committed the violations.  These challenges presented barriers to Plaintiff and the potential Do Not Call Classes, both in regard to class certification and to establishing liability (W&W Decl., ¶ 14).

The amount offered in settlement is significant. While each Class Member could arguably have been entitled to full statutory damages, there are cases which have considered, in the context of the TCPA, that "annihilating" damages would be visited upon an offending party were $500 assessed for each illegal transaction, for example the telephone calls in this case, or "junk faxes" which are also illegal under both state and federal law.  As noted, the courts have suggested that the amount of damages could be reduced because of these concerns. *See e.g. White v. E-Loan, Inc.* 2006 WL 2411420, 6 -7 (N.D.Cal., 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.* 203 Ariz. 94, 50 P.3d 844 (Ariz.App. Div. 1, 2002).

Based on the foregoing, Plaintiff could have prevailed on the merits and class certification, only to find damages reduced for each Class Member on the theory that, while the telephone calls were an invasion of privacy and, no doubt, irritating, a smaller sum is ample compensation for that invasion. Given the potential for unfavorable outcomes in this case, the beneficial relief of up to $2,000 for each Class Member, depending on the number and type of



WILLIAMSON & WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

violations experienced, weighs heavily in favor of granting final approval of the settlement.[5]

2.  <u>Risk of Maintaining Class Action Status throughout the Trial.</u>

While the risk to Plaintiff Palmer of maintaining class action status through trial was relatively small based on persuasive authority that class actions are permissible under the TCPA (*See e.g. Kaufman v. ACS Systems, Inc.,* 110 Cal. App. 4th 886(2003)), the risk of an unpredictable reduction in damages at trial was more substantial. Defendant had an argument that the amount of damages provided by the WADAD (RCW 80.36.400(3) was only "presumed," and could be a lower sum based upon specific evidence regarding each Class Member. This defense would reduce the potential damages in the case and may have served as a barrier to class certification of the WADAD class due to Sprint's potential argument concerning the need to prove individual damages. Accordingly, continued litigation would have resulted in increased risk, expense, and delay (W&W Decl., ¶ 15).

In regard to the TCPA claims, Judge Lasnik rejected a defendant's argument in opposition to class certification in a fax blasting case that aggregation of damages would create a damage award that violates due process, but suggested damages could potentially be reduced at trial. *See Kavu v. Omnipak* (Case No. 02:06-CV-00109 RSL). Judge Susan Craighead of the King County Superior Court expressed the same view in *Shorett v. Hansen, et al.* (King County Superior Court No. 07-2-23062-9). *See also Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 723 (9th Cir. 2010) ("We also reserve judgment as to whether, if [the plaintiff] prevails at trial

---

[5] Based on the high volume of claims received to date, it is expected that claims payments to Class Members will be lower than the maximum benefit available under the Settlement Agreement and related Payment Protocol (W&W Decl., ¶ 16). However, a higher claims rate, and therefore a lower per claim payment, than expected does not disqualify the settlement because, as discussed in the Parties Motion for Preliminary Approval at p. 14, "[i]t is well-settled law that [even] a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982).

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 15
(No. 09-cv-01211 JLR)



[in a case involving alleged violations of the Fair and Accurate Credit Transactions Act], the district court may be entitled to reduce the [class action] award if it is unconstitutionally excessive"). The settlement achieved by the Parties eliminated all risk of a damages reduction for Plaintiff and other Class Members and provided them with the opportunity to obtain a not insignificant payment for each of up to four offending ADAD solicitation calls they received from Defendant.

3.   Risk, Expenses, Complexity, and Likely Duration of Further Litigation.

Settlements are favored where "…continuation of the litigation 'would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time.'" *Isby v. Bayh*, 75 F.3d 1191 (1996) at 1199.  There is no question that continued litigation in this case would involve additional discovery and the potential for discovery disputes, additional motion practice, protracted trial preparation and attendant expenses for all parties, and a lengthy trial during which numerous witnesses, including experts for both sides, would likely be called to testify.  Further, the trial would likely be followed by an appeal on one or more issues, and the total duration of this litigation would extend for the next several years to come.  The settlement assures a timely and relatively expeditious resolution of the case for all concerned (W&W Decl., ¶ 17).

4.   Experience and Views of Counsel.

The experience of Class Counsel in this case is extensive, both with respect to consumer class action litigation in general, as well as litigation involving state and federal violations of laws restricting robo-call and  junk fax solicitations (W&W Decl., ¶ 18).   The Settlement

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 16
(No. 09-cv-01211 JLR)



WILLIAMSON
& WILLIAMS
17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Agreement was finalized only after extensive arms-length negotiations in a formal mediation with Judge Cahill.   That Class Counsel considers this settlement to be fair and reasonable weighs in favor of approving settlement. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation… Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Nat'l Rural Telecoms,* 221 F.R.D. at 528 (citations omitted); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.,* 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992).

     5.   Reaction of the Class Members to Proposed Settlement.

     Finally, the fact that only two Class Members have objected to the proposed settlement weighs in favor of its approval.  The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy.  Indeed, "it is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the settlement] are favorable to the class members." *Nat'l Rural Telecoms Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004).  While they were given ample opportunity to register objections, only two Class Members chose to do so, validating the assertions made by Plaintiff and her counsel that the settlement is fair, reasonable and adequate.

**D.   Certification of the Settlement Classes is Proper.**

     In *Amchem Prods. V. Windsor,* 521 U.S. 591, 117 S. Ct. 2231 (1997), the Supreme Court held that a class seeking certification for settlement purposes must satisfy the applicable requirements of Rule 23, i.e., numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority.  *See In re Magma Design Automation Secs.*



WILLIAMSON
& WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

*Litig.,* 2007 U.S. District 62641, at \*2-\*4 (N.D. Cal. Aug. 16, 2007) ("As in almost all lawsuits by shareholders of public companies, the investors [...] easily satisfy the requirements of Rule 23."). This Court conditionally certified the proposed Classes in its Preliminary Approval Order, and the proposed Classes satisfy each of the requirements of Rules 23(a) and 23(b)(3).

The proposed Classes in this case meet the numerosity, commonality, and typicality standards. Based on GCG's analysis of the 37,676 Online Claim Forms received through September 25, 2011 (W&W Decl., Exh. B), 9.72% or approximately 3,585 were from WADAD class (a) claimants, 3.84% or approximately 1,416 were from WTSA class (b) claimants, and 86.44% or approximately 31,868 were from TCPA class (c) claimants, making it clear that each settlement Subclass is numerous, that there are substantial questions of law and fact common to all settlement subclass members, and that Ms. Palmer's claims are "typical" of other Subclass members' claims.

The adequacy requirement of Rule 23(a)(4) is met: the attorneys representing the settlement Subclasses are qualified and competent, and the Class Representative is not disqualified by interests antagonistic to the remainder of the Classes. Finally, certification of a class under Rule 23(b)(3) is warranted because common issues predominate over individual issues and the class action mechanism is superior to other methods of adjudicating the controversy where all potential subclass members were victims of the same legal violation.

### E. The Awards Requested for Attorney Fees and Expenses and the Class Representative Should be Granted.

For the reasons set forth in depth in in Class Counsel's Motion for Award of Attorney's Fees and Costs and Service Award to the Named Plaintiff, with supporting Declarations of Counsel, attorney time itemization and Memorandum (Dkt. 75, 76, 77), Plaintiff respectfully

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 18
(No. 09-cv-01211 JLR)



WILLIAMSON
& WILLIAMS
17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

requests that the Court grant Plaintiff's Motion for Fees, Costs and Service Award.

###### F.   The Two Objections Should be Overruled.

Alton Mitchell of Naperville, Illinois and Ricardo H. Nigaglioni of Austin, Texas

submitted objections to the proposed settlement (W&W Decl., Exhs. C and E respectively).[6]

Two objections out of the millions of potential Class Members that received notice of the

proposed settlement and the thousands that have submitted claims is an infinitesimal number

that should not disqualify the settlement.

Generally, "the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class action settlement are

favorable to the class members." *Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.,* 221

F.R.D. 523, 529 (C.D.Cal.2004). *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d

96,118 (2nd Cir. 2005) ("On the whole, the class appears to be overwhelmingly in favor of the

Settlement.  Only eighteen class members out of five million objected to the Settlement...");

*Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 537, 543-44 (W.D. Wash. 2009) (Judge Coughenour

stated "The positive response to the Settlement of the Class-evidenced by a very small

percentage of opt-outs and objections- further supports final approval.  Of the estimate

110,000to 140,000 Class members, only 119 opted out and only three objected...").

In addition, the objections submitted in this case are without merit.  Mr. Mitchell's

objection (W&W Decl., Exh. C), voices his opinion that the Claim Form is flawed because it

requires Class Members to recall the dates and times that they received the calls in question.

---

[6] A third "Declaration of Common Law Trademark/Copyright Notice" was submitted to the Clerk of Court for the United States District Court for the Western District of Washington on August 22, 2011 by Walter Price who, based on the return envelope address, is a prison inmate in Amarillo, Texas (W&W Decl., Exh. F). Mr. Price did not submit a completed Claim Form or an Objection to the instant settlement but, rather, submitted an incoherent

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 19
(No. 09-cv-01211 JLR)



WILLIAMSON & WILLIAMS   17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

As explained in Plaintiff's counsel Rob Williamson's letter of September 27, 2011 to Mr. Mitchell (W&W Decl., Exh. D), Sprint's call vendors did not maintain call records or records of Do Not Call requests, so the Claim Form seeks approximate dates and numbers of calls received in order to ensure the calls for which claims are submitted fall within the Class Period. Completed Claim Forms in which the number and date range of the calls are approximated are acceptable and, indeed, typical of those being submitted (W&W Decl., ¶ 23). Absent call records, asking Class Members to approximate call dates was the only available method for achieving some assurance that those submitting claims are entitled to receive a. portion of the settlement funds (W&W Decl., ¶ 23).

Furthermore, Mr. Mitchell is not a Washington resident and did not receive calls in Washington so he cannot be a member of either of the two Washington Subclasses (a. and b.). He also does not recall whether he a made a Sprint-specific internal Do-Not-Call request by advising Sprint or its agent that he or she did not wish to be called again by Sprint after receiving a solicitation call from Sprint, a lapse which also disqualifies him from membership in the National Do-Not-Call Subclass c. without regard to whether he recalls approximate dates upon which he received calls from Sprint or the approximate number of calls received.

Mr. Nigaglioni's objection is based on several grounds, including that Sprint should pay the costs of claims administration and notice above and beyond the amount of the settlement fund; Plaintiff counsel's attorney's fees should not be based on a percentage of the settlement fund or deducted from the fund and the attorney's fees are unwarranted because Class Members did not receive full compensation ($16,000 per call based on FTC authority, according to Mr.

---

witnessed statement in which he in part claims "legal and quitable [sic] titles" to various versions of the name Walter Henry Price. Mr. Price's submission appears to have no bearing on this case (W&W Decl., ¶ 22).

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 20
(No. 09-cv-01211 JLR)


WILLIAMSON & WILLIAMS   17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Nigaglioni) under the settlement; there should not be a cy pres and, if there is, it should be a national, rather than a Washington State charity; the Class Representative should not receive compensation beyond what she is entitled to as a Class Member; Class Members should be permitted to transfer or assign their right to make a claim; and Class Members should be permitted to raise any breaches of the Settlement Agreement in their own states, not only Washington State (W&W Decl., Exh. E).

Plaintiff counsel's entitlement to a fee based on the percentage of the fund method of calculation is discussed at length in Counsel's Fee Petition and will not be repeated here except to say that it has been well settled for decades that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Staton*, 327 F.3d at 967; *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) and *Vincent v. Hughes Air West. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

Mr. Nigaglioni is simply mistaken that the Federal Trade Commission or its regulations provide any remedy that could have been pursued by the Plaintiff and other Class Members in this case, let alone a remedy of $16,000 per call. The only federal private right of action for redress of violations of the nature involved in the instant case is created by the TCPA and, as discussed above, the statutory penalty provided for in the TCPA is $500 per violation. *See* 47 U.S.C. § 227(c)(5)(b).

In response to Mr. Nigaglioni's position that there should be no cy pres fund, there will



WILLIAMSON
& WILLIAMS   17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

be no cy pres fund in this case because payments to Class Members will exhaust the settlement fund (W&W Decl., ¶ 24).

Mr. Nigaglioni further asserts that Ms. Palmer should not receive a Class Representative incentive award but, as discussed in Plaintiff counsel's Fee Petition, the trial court has discretion to award incentives to class representatives (*See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322 (W.D. Wash. 2009) and *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-0537 RBL, 2008 WL 1901988 (W.D. Wash. April 24, 2008). A generous incentive award is clearly appropriate here where Ms. Palmer not only worked closely with Plaintiff's counsel to help develop the Do Not Call claims, but she submitted to a lengthy deposition and attended the entire mediation, advocating for the rights of Class Members right up until the late hour at which the settlement was reached. Ms. Palmer's conduct as a Class Representative has been above reproach and has exceeded the level of participation of most class representatives and the expectations of her counsel (W&W Decl., ¶ 25). Under these circumstances, she should receive the incentive award agreed to by the Parties.

As for the objection that Class Members should not be foreclosed from transferring or assigning their right to make a claim, permitting them to do so would make an already challenging claims verification process entirely unworkable. It would be necessary to verify that that the person transferring or assigning the right to make a claim was actually a Class Member, that he or she actually intended to assign his or her claim, and that the Class Member did not submit a separate claim of his or her own. What Class Members choose to do with the settlement funds they receive is up to them, but, in order for the claims process to maintain any integrity, Class Members must be required to submit their verified own claim forms.



Finally, Mr. Nigaglioni argues that Class Members should be permitted to bring suit for breach of the Settlement Agreement in their home states, not solely in the United States District Court for the Western District Washington at Seattle as provided in the Settlement Agreement. Mr. Nigaglioni fails to recognize that this case was litigated to completion in the United States District Court for the Western District of Washington, it is that Court which has jurisdiction to approve the proposed settlement, and it is properly that Court which should decide whether the resulting Settlement Agreement has been breached at some future date. In addition, permitting Class Members to sue for breach of the Settlement Agreement in any court in the country creates a risk of different courts in various jurisdictions attempting to address the same issues simultaneously.

## VI. CONCLUSION

The Court should grant final approval of the Settlement Agreement. Based on applicable legal authority and the opinion of Class Counsel, the proposed Settlement provides for a fair, efficient and expeditious resolution of the litigation. In evaluating the proposed Settlement, Plaintiff and her counsel have considered the expense and length of time necessary to prosecute the claims through trial and possible appeal, the claims asserted by the Classes, the logistic complexities involved in resolving such claims, and the defenses available to Defendant. The risk, expense, and uncertainty in class actions and defenses asserted in this case were all considered (W&W Decl., ¶ 26).

Based on these and other considerations, Plaintiff and her counsel have concluded that it is in the best interest of the members of the Class to compromise and settle without further adversarial proceedings (W&W Decl., ¶ 27). The Court should also approve the proposed

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS - 23
(No. 09-cv-01211 JLR)



WILLIAMSON
& WILLIAMS

17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

incentive award to the Class Representative negotiated by the parties and incorporated into the

Settlement Agreement, and approve the negotiated award of attorney's fees and costs.   A

proposed Final Order and Judgment is provided for the Court's consideration.

DATED:  October 6, 2011

WILLIAMSON & WILLIAMS

By  /s/ Kim Williams
    Rob Williamson, WSBA #11387
    Kim Williams, WSBA #9077
    WILLIAMSON & WILLIAMS
    17253 Agate Street NE
    Bainbridge Island, WA  98110
    Telephone: (206) 780-4447
    Fax: (206) 780-5557
    roblin@williamslaw.com
    kim@williamslaw.com

    *Attorneys for Plaintiff Sandra Palmer and the*
    *Settlement Classes*



WILLIAMSON & WILLIAMS | 17253 AGATE STREET NE
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com